IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYALE PIGMENTS & CHEMICALS LLC,<br><br>        Plaintiff,<br><br>  vs.<br><br>BOMANITE CORPORATION, et al.<br><br>        Defendants,<br><br>  and<br><br>BUSINESS ALLIANCE CAPITAL COMPANY,<br><br>        Defendant-Intervenor.<br>_____/ | CASE NO. CV F 09-0413 LJO DLB<br><br>**ORDER DISSOLVING TRO** (Doc. 15) |

Plaintiff Royale Pigments & Chemicals ("Royale") brings this action for breach of contract and related causes of action. In 2008, defendant Bomanite Corporation purchased certain industrial chemicals from Royale. The chemicals were worth approximately $394,946.70. Bomanite has not paid for the chemicals, and allegedly is no longer operating as a going concern and is liquidating its assets. On March 6, 2009, this Court issued a Temporary Restraining Order ("TRO") to prevent Bomanite from transferring, disposing, or pledging the chemicals until the matter could be heard.

Defendant-in-Intervention Business Alliance Capital Company, a division of Sovereign Bank, a federally chartered bank, as successor to Business Alliance Capital Corp. ("BACC") moved

to intervene and to dissolve the TRO. The motion to intervene was granted. Two motions are pending before this Court: an Order to Show Cause why a preliminary injunction should not be granted and BACC's motion to dissolve the TRO. Due to the thorough briefing by the parties, counsel were contacted by this Court's chambers indicating that unless a party specifically needed oral argument that the Court did not. Thereafter, the motions were taken under submission pursuant to Local Rule 78-230(h) and the hearing set for March 26, 2009 was vacated. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

## FACTUAL BACKGROUND

### A. Plaintiff's position

#### 1. Sale of the Chemical Pigments

Plaintiff and defendant have a trade history of defendant purchasing various industrial pigment chemicals used in manufacturing defendant's architectural paving and concrete products. From July 2008 to September 2008, defendant requested and plaintiff supplied products of pigments of red, yellow and black iron oxide and green chromo oxide. Delivery of the product with the invoice formed a valid and binding contract. The invoices required payment within 30 days. Defendants failed to comply with the invoices and pay for the product. By January 2009, defendant had received plaintiff's product amounting to $394,946.70 (the "Inventory") for which it had not paid plaintiff.

#### 2. "Converting" the Invoices to a Consignment Agreement

When plaintiff became certain that defendant was not going to pay for the Inventory, plaintiff alleges that plaintiff and Bomanite negotiated a "Consignment Agreement" on January 22, 2009. The Consignment Agreement was memorialized in a series of emails, but not fully executed in a single writing. Emails between Royale principal, John Logue, and Bomanite principal, Russ Ingersoll, purport to memorialize their agreement. The Consignment Agreement permitted defendant to hold the Inventory and not make any payment under the invoices. In consideration, the parties agreed that ownership of the "Inventory" would be transferred to plaintiff and plaintiff would receive payment upon the use of any of the Inventory by Bomanite. Plaintiff alleges the Consignment

Agreement superceded the invoices and ownership in the Inventory would be transferred to plaintiff. The parties attempted to reduce to a single written document the parties' agreement as to the Consignment Agreement. They exchanged drafts and agreed to the terms and conditions. The parties understood that the Consignment Agreement related to the Inventory which was already in Bomanite's possession.

Plaintiff argues that implicit in the Consignment Agreement was that in order to maintain possession of the Inventory, defendant was to remain a going business concern. After entering into the Consignment Agreement, Bomanite informed plaintiff that the bank pulled all of the financing for Bomanite and was liquidating its assets. On February 17, 2009, after the parties agreed in principle, Mr. Ingersoll notified plaintiff that defendant's bank revoked defendant's financing and Bomanite was liquidating its assets.

**3.     Turnonver request**

By written demand on February 26, 2009, plaintiff requested turnover of the Inventory. Defendant refused and stated Royale has no right in the proposed Consignment Agreement and that Royale is an unsecured creditor. Defendant reconfirmed that it is being liquidated and would no longer be a going concern.

Plaintiff's complaint alleges claims for:

1. Breach of Contract
2. Claim and Delivery of personal property
3. Conversion
4. Declaratory relief
5. Unjust Enrichment/Restitution
6. Breach of the Covenant of Good Faith and Fair Dealing
7. Injunctive Relief

**B.     BACC's Position**

Bomanite is indebted to BACC for approximately $2.7 million for secured commercial loans made by BACC beginning in February 2005. Bomanite and BACC executed a Loan and Security Agreement ("Loan Agreement") and promissory notes for loans to Bomanite. As security for the

Loan Agreement, Bomanite granted BACC a security interest in certain collateral. The Loan Agreement states Bomanite granted BACC "a continuing security interest in all presently existing and hereafter acquired or arising Collateral in order to secure prompt repayment . . ." (Doc. 21, Loan and Security Agreement p. 8, ¶4.1.) According to the Loan Agreement, "Collateral" includes "all Inventory." (Doc. 21, Loan and Security Agreement p.2.)

On January 11, 2005, BACC perfected its security interest in the Collateral by filing three UCC-1 Financing Statements with the California Secretary of State. (Doc. 21.) BACC has a valid and perfected senior security interest in all of Bomanite's personal property including all of Bomanite's inventory. Bomanite is now in default of the Loan Agreement and has not repaid the demand by BACC. Because the demand has not been paid, by letter on February 26, 2009, BACC declared an Event of Default under the Loan Agreement.

BACC contends that Royale delivered goods to Bomanite, Bomanite failed to pay and now Royale is an unsecured creditor for the amount owed.

## ANALYSIS AND DISCUSSION

The issue before the Court is whether to further restrain defendant Bomanite pending trial from transferring any interest in the Inventory supplied by plaintiff by sale, pledge, or grant of security interest, or otherwise disposing of, or encumbering the Inventory.

**A.  Injunction Standards**

The legal principles applicable to a request for preliminary injunctive relief are well established. To prevail, the moving party must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor." *Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985), *quoting Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). Plaintiff need not show positively it will prevail on the merits. A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. *Oakland Tribune*, 762 F.2d at 1376.

"Under either formulation of the test [for injunctive relief], plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Id.*

A preliminary injunction's purpose is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981). "Status quo" means the last uncontested status that preceded the pending controversy. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Additional criteria must be satisfied for a preliminary injunction to be available to a plaintiff:

1. A strong likelihood of success on the merits;
2. Possibility of irreparable harm to plaintiff absent an injunction;
3. Threatened injury to plaintiff outweighs damage which the proposed injunction may cause to the opposing party; and
4. Public interest favors issuance of an injunction.

*See Regents of the Univ. of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

**B.     Likelihood of Success on the Merits**

Plaintiff does not have a likelihood of success on the merits of the Consignment Agreement.

**1.     Commercial Code**

The initial transaction of the Inventory was a sale of goods under the California Commercial Code. Under California's Commercial Code, a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. Cal.Com.Code § 2204. There is not any dispute that the invoices are for the sale of the Inventory to Bomanite in 2008. (Doc. 5, see Logue Decl ¶3-6.) The initial transaction between the parties was a sale of the Inventory to Bomanite.

Title to the Inventory transferred to Bomanite upon the delivery of the goods. Section 2401(2) of the Commercial Code provides in pertinent part:

> "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...."

The invoices do not evidence any intent other than to transfer title of the Inventory to Bomanite upon delivery. The invoices do not state language that plaintiff retained any title to the Inventory. Thus, the initial transaction transferred title of the Inventory to Bomanite upon delivery.

Royale did not retain a security interest in the Inventory once title transferred. Section 2401 of the Uniform Commercial Code states that the retention or reservation of title by a seller of goods, is a reservation of a security interest in the goods. Here, the invoices do not evidence an intention to retain title in the goods. The invoices do not state any language which indicates plaintiff retained a security interest. Since the invoices are silent as to retaining title to the Inventory, plaintiff did not retain a security interest in the goods.[1] Indeed, plaintiff does not argue that it retained a security interest in the goods. Further, plaintiff does not present evidence that it perfected any security interest in the Inventory. Thus, the evidence before the Court is that plaintiff does not have a security interest in the Inventory.

### 2. Bank's Security Interest

BACC presents evidence that it has a security interest in Inventory. Bomanite and BACC are parties to a Loan and Security Agreement. Bomanite is in default of its loan obligations to BACC for approximately $2.7 million. To secure Bomanite's obligations under the Loan and Security Agreement, Bomanite granted BACC, and BACC perfected, a continuing first priority security interest in Bomanite's assets, including the inventory which is the subject of the TRO. Bomanite presents evidence of Financing Statements which were filed with the Secretary of State perfecting its security interest in "inventory," among other forms of collateral.

The priority of a security interest depends, among other things, upon its being "perfected." A security interest is perfected "when it has attached and when all of the applicable steps required for

---

[1] In contrast to a sale, a bailment, or "deposit for keeping," does not involve the transfer of title. (See Civ.Code, § 1817.) Unless the receiving party is obligated to return or account for the property, there is a sale rather than a bailment. *H.S. Crocker Co., Inc. v. McFaddin*, 148 Cal.App.2d 639, 644, 307 P.2d 429 (1957).

perfection have been taken" as required by Commercial Code §§ 9302, 9304, 9305 and 9306. An interest is perfected when:

    (a) the debtor has rights in collateral (§ 9203(1)( c);

    (b) the security interest has "attached," i.e., has become "enforceable against the debtor" (§ 9203(2)); and

    ( c) a "financing statement" has been filed (§ 9302 (1))(d) in the appropriate place of filing (§§ 9401(1)(b) and 9306 (3)).

*Bank of Stockton v. Diamond Walnut Growers, Inc.*, 199 Cal.App.3d 144, 151 (1988).

Here, the evidence before the Court is that BACC has a security interest in the Inventory. BACC has rights in the Collateral pursuant to the Loan Agreement. The security interest attached as of January 2005 with the filing of the Financing Statements. Royale, on the other hand, does not have a security interest.

Even if the Court accepts Royale's allegation of a sale agreement converted to a consignment agreement, Royale's interest in the inventory is subordinate, junior and subject to BACC's senior security interest in the Inventory. Title transferred to the Inventory upon the sale of the Inventory to Bomanite in 2008. The Consignment Agreement, assuming its existence, was entered in January 2009, after BACC's perfected security interest. Royale did not file a financing statement with respect to the Inventory or provide notice to BACC of the alleged consignment of the Inventory at the time Royale delivered the Inventory to Bomanite. Thus, BACC has a senior perfected security interest.

Title in the Inventory passed to Bomanite when Royale delivered it to Bomanite. Thereafter, Royale retained no interest in the Inventory. Royale's right in the event of Bomanite's failure to pay is an action against Bomanite for the price of the Inventory. Cal.Comm.Code § 2709 ("When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price . . .").

**3.    Plaintiff's Opposition to Dissolving the TRO**

In plaintiff's opposition to dissolving the TRO, plaintiff argues that BACC waived its security interest in the Collateral. (Doc. 27.) Plaintiff argues that BACC "waived any negative

covenants" in the "Loan and Security Agreement by expressly permitting Defendant to proceed with the Consignment Agreement with Plaintiff." (Doc. 27, Plaintiff's Reply p.1.) As evidence to support waiver, plaintiff presents the declaration of Bomanite's principal, Russ Ingersoll. Mr. Ingersoll testifies that he contacted the "Bank" and testifies that "[a]fter a further analysis and discussion with the bank I was assured that . . .it would be acceptable to proceed with a consignment relationship with Royale." This is the sole evidence presented in support of "waiver" of the security interest. (Doc. 28, Ingersoll Decl. ¶5.)

Royale presents no legal authority for the proposition that a perfected senior security interest may be waived by oral representations. Royale does not present any written documents of BACC's waiver of its security interest. Further, assuming the hearsay evidence from Mr. Ingersoll were competent evidence, the testimony does not expressly or impliedly state that BACC was <u>waiving</u> its security interest. Mr. Ingersoll's statement merely indicates that the bank had no objection to a consignment relationship with Royale.

BACC has senior perfected security interest in the Inventory which was not waived by oral representations. Accordingly, the TRO should be dissolved.

**C.  Irreparable Injury and Weighing the Equities**

The Court need not reach the remaining factors in determining whether a preliminary injunction should issue. Royale does not have a likelihood of prevailing on the Consignment Agreement. Therefore, the preliminary injunction should be denied and the TRO dissolved.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Court DISSOLVES the Temporary Restraining Order.

IT IS SO ORDERED.

**Dated:   March 25, 2009**                     **/s/ Lawrence J. O'Neill**
                                                                  UNITED STATES DISTRICT JUDGE